U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**2025 APR 18  AM 11: 37**

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA

v.                                                    Docket No. 2:24-cr-00092 – 1

STEPHEN LOEWE,
Defendant.

PLEA AGREEMENT

The United States of America, by and through the United States Attorney for the District
of Vermont (hereafter "the United States"), and the defendant, STEPHEN LOEWE, agree to the
following in regard to the disposition of pending criminal charges.

1.   STEPHEN LOEWE agrees to waive Indictment and plead guilty to Counts One and Two
of the Superseding Information, charging him with:

   a.   As to Count One: On or about August 13, 2024, by force, violence, and
        intimidation, taking from the person of another money, namely $500, belonging to
        and in the care, custody, control, management, and possession of Claremont
        Savings Bank in Springfield, Vermont, a bank whose deposits were then insured
        by the Federal Deposit Insurance Corporation – in violation of 18 U.S.C.
        § 2113(a); and

   b.   As to Count Two: Between in or about December 2023 and in or about May 2024,
        transporting, transferring, and disposing of firearms to another person in or
        otherwise affecting interstate commerce, knowing or having reasonable cause to
        believe that the use, carrying, or possession of the firearm by the recipient would
        constitute a felony – in violation of 18 U.S.C. § 933(a)(1).

1

2.  STEPHEN LOEWE understands, agrees and has had explained to him by counsel that the

Court may impose the following sentence on his plea:

      a.  As to Count One: up to 20 years of imprisonment, pursuant to 18 U.S.C.

         § 2113(a); up to 3 years of supervised release, pursuant to 18 U.S.C. § 3583; up to

         a \$250,000 fine, pursuant to 18 U.S.C. § 3571(b)(3); and a \$100 special

         assessment pursuant to 18 U.S.C. § 3013; and

      b.  As to Count Two: up to 15 years of imprisonment, pursuant to 18 U.S.C.

         § 933(b); up to 3 years of supervised release, pursuant to 18 U.S.C. § 3583; up to

         a \$250,000 fine, pursuant to 18 U.S.C. § 3571(b)(3); and a \$100 special

         assessment pursuant to 18 U.S.C. § 3013.

STEPHEN LOEWE further understands that the Court must order full restitution to the victims

of Count One in an amount determined by the Court, pursuant to 18 U.S.C. § 3663A.

3.  STEPHEN LOEWE agrees to plead guilty because he is, in fact, guilty of the above

crime.

4.  STEPHEN LOEWE stipulates to, agrees with, and admits the following facts:

      a.  On August 13, 2024, STEPHEN LOEWE entered the Claremont Savings Bank at
         85 Main Street in Springfield, Vermont. He approached a teller window and
         placed a note on the counter, which read, "This is a robbery. I want 500 in 100 no
         transponder. Wait 10 minutes before the alarm and no dye pack." The teller did
         not have 100-dollar bills in her drawer, so she took the note to her coworker at the
         next window. The second teller gave LOEWE cash, and LOEWE said, "This is
         only four." The second teller then gave LOEWE an additional 100-dollar bill,
         and LOEWE left the bank.

      b.  Also on August 13, 2024, STEPHEN LOEWE entered the M&T Bank at 6 Main
         Street in Springfield, Vermont. He approached a teller window and slid a note
         written on the back of a withdrawal ticket to the teller. The note stated that he
         wanted large bills and no dye pack or GPS, and that the teller should wait to
         activate the alarm until he had been gone for 10 minutes. The teller handed
         LOEWE \$910 in 100s, 50s, and 20s, and LOEWE left the bank.

c. On August 14, 2024, STEPHEN LOEWE entered the M&T Bank at 58 Main Street in Putney, Vermont. He approached the teller window and slid a note to the teller. The note stated that this was a robbery and demanded money. The teller gave LOEWE everything in her drawer, which amounted to approximately $1,000, and LOEWE left the bank.

d. In a post-arrest interview and after knowingly and voluntarily waiving his *Miranda* rights, LOEWE admitted to using the money he obtained from robbing the three banks to obtain cocaine base for his personal use.

e. In August 2024, all three of the above-listed banks were insured by the Federal Deposit Insurance Corporation.

f. Therefore, on three occasions between August 13 and 14, 2024, LOEWE took from the person of another money belonging to and in the care, custody, control, management, and possession of an FDIC-insured bank in Vermont.

g. Between in or about December 2023 and in or about May 2024, STEPHEN LOEWE purchased 19 firearms, with the following serial numbers, from the following Federal Firearm Licensees, on the following dates:

| Date | Firearm | Serial Number | Federal Firearm Licensee |
|---|---|---|---|
| 12/15/2023 | Glock 19G5, 9mm pistol | BSOP764 | Sporting & Hunting Depot, Charlestown, NH |
| 12/15/2023 | Ruger Wrangler, 22 revolver | 207-17599 | Sporting & Hunting Depot, Charlestown, NH |
| 12/17/2023 | Glock 29, 10mm pistol | BZCX443 | Sporting & Hunting Depot, Charlestown, NH |
| 2/19/2024 | Glock 22, 40 cal. pistol | PTA732 | Alstead Gun Shop, Alstead, NH |
| 2/19/2024 | Glock 17, 9mm pistol | BZZT924 | Alstead Gun Shop, Alstead, NH |
| 2/22/2024 | Glock 20SF, 10mm pistol | BYSF697 | Sporting & Hunting Depot, Charlestown, NH |
| 3/19/2024 | Glock 19G5, 9mm pistol | CBNV887 | Alstead Gun Shop, Alstead, NH |
| 3/19/2024 | Glock 23, 40 cal. pistol | RHE831 | Alstead Gun Shop, Alstead, NH |
| 4/3/2024 | Smith & Wesson Shield, 9mm pistol | HTF3998 | Black Op Arms, Claremont NH |
| 4/4/2024 | Ruger Sec. 9, 9mm pistol | 38693501 | Black Op Arms, Claremont NH |
| 4/6/2024 | Glock 29, 10mm pistol | BZCW047 | Black Op Arms, Claremont NH |
| 4/6/2024 | Glock 20G4, 10mm pistol | AGWS016 | Sporting & Hunting Depot, Charlestown, NH |
| 4/14/2024 | Glock 43X, 9mm pistol | AKKA188 | Black Op Arms, Claremont NH |
| 4/15/2024 | Glock 44, 22 cal. pistol | AHHA966 | American Trikes & Motorsports, Keene, NH |
| 4/15/2024 | Glock 23, 40 cal. pistol | ERD194 | American Trikes & Motorsports, Keene, NH |
| 4/15/2024 | Glock 26, 9mm pistol | AGTR786 | American Trikes & Motorsports, Keene, NH |
| 5/20/2024 | Glock 26, 9mm pistol | AHYW895 | American Trikes & Motorsports, Keene, NH |
| 5/20/2024 | Glock 23, 40 cal. pistol | BUSP276 | American Trikes & Motorsports, Keene, NH |
| 5/29/2024 | Glock 27, 40 cal. pistol | CBKY722 | American Trikes & Motorsports, Keene, NH |

h. Prior to the above-listed purchases, LOEWE's drug supplier, R.M., approached LOEWE and asked if LOEWE would purchase firearms for R.M. in exchange for drugs. LOEWE understood R.M. to be asking him to purchase firearms for R.M.

because LOEWE had a "clean record" – *i.e.*, that, unlike R.M., LOEWE was not a convicted felon at the time. LOEWE purchased the above-listed firearms following this conversation and provided all but one of them to R.M. He purchased the remaining firearm on behalf of another person during this period.

    i.  As to each of the firearms purchased for R.M., LOEWE obtained from R.M. the money to purchase the firearm and information as to what kind of firearm to purchase. LOEWE would then purchase the firearm as directed by R.M. and turn the firearm over to R.M. at R.M.'s residence in Rockingham, Vermont. R.M. would give LOEWE approximately 2–3 grams of cocaine base as payment.

    j.  LOEWE admitted to knowing that this conduct was illegal and wrong.

    k.  Therefore, between in or about December 2023 and in or about May 2024, LOEWE transported, from New Hampshire to Vermont, and then transferred and disposed of firearms to R.M. in or otherwise affecting interstate commerce, knowing or having reasonable cause to believe that the use, carrying, or possession of those firearms by R.M. would constitute a felony.

5. STEPHEN LOEWE stipulates that the elements of the offenses to which he is pleading guilty are:

    a.  As to Count One: (1) that the defendant took money in the amount charged from the person of another, while that money was in the care or custody of the bank specified; (2) that such taking was by force and violence or by intimidation; and (3) that the deposits of the specified bank were then insured by the Federal Deposit Insurance Corporation; and

    b.  As to Count Two: (1) that the defendant knowingly transported, transferred, or disposed of, as charged, firearms, to another person; (2) that the transporting, transferring, or disposition of the firearms was in or otherwise affecting interstate commerce; and (3) that the defendant knew or had reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony.

4

6. STEPHEN LOEWE stipulates and agrees pursuant to 18 U.S.C. § 3663(a)(3) to pay restitution related to the robberies of the M&T Bank in Springfield on August 13, 2024, and the M&T Bank in Putney on August 14, 2024, described above in paragraph 4. LOEWE further agrees that victims of these offenses will be afforded the Rights of Crime Victims established in 18 U.S.C. § 3771 as if LOEWE had been convicted of these offenses, including the rights to be reasonably heard by the Court at public proceedings involving release, plea, and sentencing.

7. STEPHEN LOEWE understands, stipulates, and agrees that, pursuant to U.S.S.G. § 1B1.2(c), the United States Sentencing Guidelines will treat his admissions in this plea agreement to the robberies of the M&T Bank in Springfield on August 13, 2024, and the M&T Bank in Putney on August 14, 2024, as if he had been convicted of those additional offenses. This treatment will likely increase LOEWE's offense level as calculated by the Guidelines.

8. STEPHEN LOEWE understands that it is a condition of this agreement that he refrain from committing any further crimes, whether federal, state or local, and that if on release he will abide by all conditions of release.

9. STEPHEN LOEWE acknowledges that he understands the nature of the charges to which he will plead guilty and the possible penalties. He also acknowledges that he has the following rights: the right to persist in a plea of not guilty; the right to a jury trial; the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses; the right to be protected from compelled self-incrimination; and the right to testify and present evidence and to compel the attendance of witnesses. He understands that by pleading guilty, he will waive these rights. He also understands that if his guilty plea is accepted by the Court, there

will be no trial and the question of guilt will be resolved; all that will remain will be the Court's imposition of sentence.

10. STEPHEN LOEWE fully understands that he may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation of the parties to this agreement, other than an agreement between the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States specifically reserves the right to allocate at sentencing. There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the government may take at sentencing. Both parties are free to move for a departure under the Guidelines and to argue for a sentence outside the advisory sentencing range, except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

11. STEPHEN LOEWE fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. STEPHEN LOEWE acknowledges that there is no agreement between the parties as to both the calculation of the offense level and the defendant's criminal history category. STEPHEN LOEWE understands his criminal history could impact both the offense level and the criminal history category applicable to his Guideline calculation. He fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. He acknowledges that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous,

those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief.

12. Upon demand, STEPHEN LOEWE shall furnish the United States Attorney's Office a personal financial statement and supporting documents relevant to the ability to satisfy any fine or restitution that may be imposed in this case. STEPHEN LOEWE expressly authorizes the United States Attorney's Office to obtain a credit report on him at any time before or after sentencing in order to evaluate his ability to satisfy any financial obligation imposed by the court. If the court orders restitution and/or a fine due and payable immediately, STEPHEN LOEWE agrees that the U.S. Attorney's Office is not precluded from pursuing any other means by which to satisfy his full and immediately enforceable financial obligation. STEPHEN LOEWE understands that he has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the court.

13. STEPHEN LOEWE agrees to provide the Clerk's office, at the time this plea agreement is executed, a bank cashier's check, certified check, or postal money order payable to the Clerk, United States District Court, in payment for the mandatory special assessment of $200 for which he will be responsible when sentenced. He understands and agrees that, if he fails to pay the special assessment in full prior to sentencing, the sentencing recommendation obligations of the United States under this plea agreement will be terminated, and the United States will have the right to recommend that the Court impose any lawful sentence. Under such circumstances, he will have no right to withdraw his plea of guilty.

14. STEPHEN LOEWE recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. The defendant, if not a United States citizen, may be removed from the United States, denied citizenship, and denied admission

7

to the United States in the future. Removal and other immigration consequences are the subject of a separate proceeding, however, and he understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. STEPHEN LOEWE nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

15. The United States agrees that in the event that STEPHEN LOEWE fully and completely abides by all conditions of this agreement, the United States will:

    a.  not file additional federal charges in the District of Vermont based on the conduct described in the factual stipulations at paragraph 4 and for violations of 18 U.S.C. § 2113(a) committed by him on August 13 or 14, 2024, in the District of Vermont, or 18 U.S.C. § 933(a)(1) committed by him between December 2023 and May 2024 in the District of Vermont;

    b.  recommend to the sentencing Court that he be sentenced to a term of imprisonment at the low end of the Sentencing Guidelines range if the total offense level is 26 or above;

    c.  recommend that he receive a two-point credit for acceptance of responsibility under Guideline § 3E1.1(a), provided that (1) he cooperates truthfully and completely with the Probation Office during the presentence investigation, including truthfully admitting the conduct comprising the offense(s) of conviction and not falsely denying any relevant conduct for which he is accountable under U.S.S.G. § 1B1.3, (2) he abides by the conditions of his release, and (3) provided

that no new information comes to the attention of the United States relative to the
issue of his receiving credit for acceptance of responsibility; and

d. move for an additional one-point credit for timely acceptance of responsibility, if
the offense level (before acceptance) is 16 or greater and he meets the conditions
in the subparagraph above.

16. If the United States determines, in its sole discretion, that STEPHEN LOEWE has
committed any offense after the date of this agreement, has violated any condition of release, or
has provided any intentionally false information to Probation, the obligations of the United States
in this agreement will be void. The United States will have the right to recommend that the Court
impose any sentence authorized by law and will have the right to prosecute him for any other
offenses he may have committed in the District of Vermont. STEPHEN LOEWE understands
and agrees that, under such circumstances, he will have no right to withdraw his previously
entered plea of guilty.

17. It is understood and agreed by the parties that should STEPHEN LOEWE's plea not be
accepted by the Court for whatever reason, or later be withdrawn or vacated, this agreement may
be voided at the option of the United States and he may be prosecuted for any and all offenses
otherwise permissible. STEPHEN LOEWE also agrees that the statute of limitations for all
uncharged criminal offenses known to the United States as of the date it signs this plea
agreement will be tolled for the entire period of time that elapses between the signing of this
agreement and the completion of the period for timely filing a petition under 28 U.S.C. § 2255,
or if such petition is filed, the date of any decision by a court to vacate the plea or the conviction.

18. It is further understood that this agreement is limited to the Office of the United States Attorney for the District of Vermont and cannot bind other federal, state or local prosecuting authorities.

19. STEPHEN LOEWE expressly states that he makes this agreement of his own free will, with full knowledge and understanding of the agreement and with the advice and assistance of his counsel, Sara Puls, Esq. STEPHEN LOEWE further states that his plea of guilty is not the result of any threats or of any promises beyond the provisions of this agreement. Furthermore, STEPHEN LOEWE expressly states that he is fully satisfied with the representation provided by his attorney, Sara Puls, Esq., and has had full opportunity to consult with his attorney concerning this agreement, concerning the applicability and impact of the Sentencing Guidelines (including, but not limited to, the relevant conduct provisions of Guideline Section 1B1.3), and concerning the potential terms and conditions of supervised release.

20. No agreements have been made by the parties or their counsel other than those contained herein or in any written agreement supplementing this agreement.

UNITED STATES OF AMERICA

MICHAEL P. DRESCHER
Acting United States Attorney

4/18/25
Date

By:

CORINNE M. SMITH
Assistant U.S. Attorney

4/18/25
Date

STEPHEN LOEWE
Defendant

10

I have read, fully reviewed and explained this agreement to my client, STEPHEN LOEWE. I believe that he understands the agreement and is entering into the agreement voluntarily and knowingly.

4/10/25
_____
Date

_____
SARA PULS, Esq.
Counsel for the Defendant